# In the District Court of the United States
# For the District of South Carolina
## BEAUFORT DIVISION

Donnie Wayne Sheffield,       )
                                     )      Civil Action No. 9:07-3550-JFA-GCK
              Plaintiff,     )
                                     )
      vs.                 )      **REPORT AND RECOMMENDATION**
                                     )      **OF THE MAGISTRATE JUDGE**
Tammy Edwards, Nurse;        )
Lt. NFN Redden, Shift Supervisor;   )
Cpl. NFN Eli, Classification Officer; and )
Cpt. Joyce W. Brunson,        )
                                     )
                                     )
            Defendants.    )
_____)

## I.  INTRODUCTION

The Plaintiff, Donnie Wayne Sheffield ("Plaintiff" or "Sheffield"), a federal pre-trial detainee, was housed in the Florence County Detention Center ("FCDC") at the time of events giving rise to this action.[1]  He has filed suit against Tammy Edwards, Nurse ("Nurse Edwards"), Lt. NFN Redden, Shift Supervisor ("Lt. Redden"), Cpl. NFN Eli, Classification Officer ("Cpl. Eli"), and Cpt. Joyce W. Brunson ("Cpt. Brunson"), alleging that the defendants (collectively, the "Defendants") were deliberately indifferent to his medical needs in violation of his civil rights under Title 42, United

---

[1]      Plaintiff states he was released from FCDC custody on April 19, 2007.  *See* Plaintiff's Memorandum in Support of Brief in Opposition of [sic] Defendants' Motion for Summary Judgment [33-2] at p. 2.  According to the Court's research, Plaintiff was released from the Federal Bureau of Prisons on June 2, 2008.  See www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch accessed on June 26, 2008.

States Code Section 1983.[2]  More specifically, Plaintiff contends that the Defendants subjected him to neglectful and discriminatory conditions of confinement because the Plaintiff did not receive any medical treatment for a hereditary skin condition and had to be treated for staph infection while incarcerated at FCDC.  The Plaintiff requests injunctive relief, and seeks monetary damages from the Defendants.

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C.  Pending before the court are the following motions:  Plaintiff′s motion for a preliminary injunction [11], Plaintiff′s motion for the appointment of counsel [19], Plaintiff′s motion to stay the preliminary injunction [20], Plaintiff′s second motion for appointment of counsel [33], and Plaintiff′s motion for an order of protection with respect to his mail [34].  Also pending before the court is the Defendants' motion for summary judgment.  [28]  As the Defendants' motion is a dispositive motion, the Report and Recommendation is entered for review by the District Court.

## II.  *PRO SE* AND *IN FORMA PAUPERIS* REVIEW

Under established local procedure in this judicial district, a careful review has been made of the pro se complaint herein pursuant to the procedural provisions of 28 U.S.C. § 1915.  This review

---

[2]    42 U.S.C. §1983 provides, in pertinent part:
  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

has been conducted in light of the following precedents: *Neitzke v. Williams*, 490 U.S. 319, 324-25, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); and *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir.1978).

The complaint *sub judice* has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without paying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious." 28 U.S.C. § 1915(e) (2)(B)(i), (ii). A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). Hence, under Section 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995). The court may dismiss a claim as "factually frivolous" under Section 1915(e) if the facts alleged are clearly baseless. *Denton*, 504 U.S. at 31. In making this determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor. *Id.*

This Court is required to liberally construe pro se documents, *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), holding them to a less stringent standard than those drafted by attorneys. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hughes v. Rowe*, 449 U.S. 9 (1980) (*per curiam* ). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction

afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.  BACKGROUND AND PROCEDURAL HISTORY

On October 24, 2007,[3] Plaintiff filed his verified Complaint[4] alleging that the Defendants' actions and/or inactions constituted medical negligence, medical neglect, and discrimination against Plaintiff on the grounds of his hereditary skin disorder (psoriasis).[5] The record reflects that Plaintiff, a

---

[3]    Should a limitations issue arise in this action, Plaintiff will have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the delivery date of his complaint. *See* this court's Order [6] filed on November 1, 2007. The Plaintiff's motion to proceed IFP also was granted in this Order.

[4]    In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[5]    According to the National Psoriasis Foundation, psoriasis is a noncontagious, lifelong skin disease. It is an immune-mediated, genetic disease manifesting in the skin and/or the joints. In Plaque psoriasis, the most common type, patches of skin called "lesions" because inflamed and are covered by silvery white scale. Psoriasis can be limited to a few lesions or can involve moderate to large areas of skin. The severity of psoriasis can vary from person to person; however, for most people, psoriasis tends to be mild. Psoriasis is not contagious, and is not something you can "catch" or "pass on." The

federal inmate, was incarcerated in the FCDC on Thursday, May 17, 2007, in an open unit. "Nurse Moreen" from medical appeared, and Plaintiff showed her a "development" on his arm that had turned up on its own. He was instructed to submit a sick call request form. The next day, Nurse Moreen brought Plaintiff two-1 oz. tubes of hydrocortisone. Plaintiff applied the cream to his arm, and to other places on his body where he noticed sore, swollen red areas. According to Plaintiff, by Saturday, he was in serious pain due to sores in his groin area on his left and right thighs. On Monday, he submitted a second sick-call request and was taken to medical at about 9:30 a.m., where Nurse Edwards diagnosed him with a staph infection and told him she would move him out of the open unit. He and Nurse Edwards discussed his skin condition, which she diagnosed as psoriasis, a non-contagious hereditary skin condition, as well as his staph infection, which was very contagious and could be spread simply by scratching the psoriasis. (Complaint [1] at p. 3).

Later that Monday, around 4:00 p.m., Nurse Moreen entered Plaintiff's unit and told Plaintiff he would have to take an antibiotic twice a day for ten days. That night, Plaintiff was moved to a single man cell in D-unit, where he was locked down 22 hours each day. His uniforms, linens, and towels were not washed separately; he used the same shower as other inmates, and claims it was not cleaned until October. (Complaint [1] at p. 4). The next day, he did not receive his antibiotic, but was escorted to medical and informed that the nurses did not know which unit to send his pill to. At that time, his right thigh looked like an egg was under the skin and it was very painful. On Wednesday, the wound erupted, causing the fluid to run down his leg and puddle around his foot. He was taken to medical, where Nurse Edwards saw he was in pain and he received pain medication (Motrin) and his

psoriatic lesions may not look good, but they are not infectionsor open wounds. People with psoriasis pose no threat to the health or safety of others.

See www.psoriasis.org/about/faq, accessed on August 13, 2008.

antibiotic at 4 a.m. on Thursday.  Plaintiff states that he received his antibiotic pill late on August 30, 2007.  He was under Nurse Edwards' care for three weeks.  They discussed psoriasis and she said she would order some "Lupo cream".  (Complaint [1] at p. 4).  During morning visits, Nurse Edwards would comment about dried blood on his boxer shorts from the psoriasis, and would warn him that he could spread the staph infection by scratching his psoriasis.  (Complaint [1] at p. 4 & A).  Plaintiff contends he should have been treated with preventive measures to ensure he would not have a second staph infection (which apparently occurred under his unshaven beard on or about November 21, 2007).  (*See* Edwards Affidavit [28-3] at ¶ 18).

On September 10, 2007, Nurse Edwards ended his medical visits, and Plaintiff asked her to call classification and tell them he had been released so he could return to open unit.  Nurse Edwards said she would.  (Complaint [1] at p. A).

Plaintiff alleges that discrimination against him began on September 13, 2007, when Officer Freddie Paige strip-searched him in a shower stall and asked, "What's wrong with you?"  Plaintiff stated "Psoriasis."  Officer Paige called Shift supervisor Lt. Redden who looked at Plaintiff and asked whether the Nurse was aware of his condition.  Plaintiff stated he had been going to the nurse every morning for three weeks for his staph infection.  He was asked if he had anything for it, and Plaintiff said, "No!"  Lt. Redden said he would personally see the nurse and left the unit.  Shortly thereafter, Lt. Redden came back in the unit and gave him a disciplinary ticket authorizing a 12 hour lockdown.  Plaintiff informs the court that any disciplinary ticket will effect his custody level and privileges.  Later that same day, according to Unit Officer Eddy, Classification Officer Pvt. Caldwell enquired about him, but Plaintiff did not personally speak to the Classification Officer.  (Complaint [1] at p. A).

The following Tuesday, September 18, 2007, Plaintiff spoke to Pvt. Caldwell and Cpl. Eli, who

both were in the unit. (Complaint [1] at p. A-B). Pvt. Caldwell said Plaintiff was on the list to return

to the open unit on September 13, 2007, but she could not move Plaintiff with a disciplinary ticket.

(Complaint [1] at p. B). Plaintiff explained that the ticket was frivolous, but Cpl. Eli told him that any

inmate had a thirty-day waiting period before being considered again. Plaintiff was aware that Inmate

Glover had received a disciplinary ticket the same day as he had received one (September 13, 2007)

for a twenty-four hour lockdown, but seven days later, on September 20, Glover was moved to an

open unit. Plaintiff wrote Cpt. Brunson a grievance, but Plaintiff alleges that it was obvious that Cpt.

Brunson had been apprised of his medical condition, and the disciplinary ticket which stopped his

return to the open unit was not at issue. Plaintiff contends that Cpl. Eli also changed her reason, and

informed the Plaintiff that he was not allowed back in the open unit because his grievance involved

another staff member. On October 8, 2007, Plaintiff wrote medical for a third sick call request about

his psoriasis, requesting that he be seen by someone outside the FCDC. As of October 24, 2007,

Plaintiff was awaiting a response. (Complaint [1] at p. B). Plaintiff seeks the following relief: (1) to

have counsel appointed to take photographs of his condition; (2) an appointment with a dermatologist

for diagnosis and treatment; (3) transfer to another facility to prevent retaliation from FCDC officers;

(4) $10,000.00 as payment for negligence, medical neglect, pain and humiliation during group strip

searches suffered at the hands of staff and inmates; and (5) money damages for discrimination by the

staff who has ordered his lockdown in a single man cell for his non-contagious psoriasis for which he

received no treatment. (Complaint [1] at p. 5).[6]

---

[6]    To the extent Plaintiff seeks monetary damages for "humiliation", or emotional distress, it
is well-settled that emotional distress is not actionable under 42 U.S.C. § 1983 and that
plaintiff is not entitled to compensatory damages for mental anguish or emotional distress.
Case law has held that there is no federal constitutional right to be free from emotional
distress, psychological stress, or mental anguish, and, hence, there is no liability under
Section 1983 regarding such claims. *See Grandstaff v. City of Borger*, 767 F.2d 161 (5th
Cir. 1985), rehearing denied, 779 F.2d 1129 (5th Cir. 1986), *cert. denied, City of Borger v.*

After Plaintiff filed his complaint, he filed a motion for preliminary injunctive relief [11], alleging that in retaliation for filing his complaint, Nurse Edwards refused to transfer Plaintiff from a Maximum Segregation cell, where he had been housed during his treatment for a staph infection in order to protect other inmates, to general population until Plaintiff finished his course of prescribed antibiotics.  More specifically, Plaintiff's motion for preliminary injunctive relief sought (1) a transfer from FCDC; (2) to have once per day showers, as he had been permitted in D-unit; (3) a refund for his commissary snack items that had been confiscated by the FCDC staff upon his transfer to the Maximum Segregation cell on November 21, 2007; and (4) treatment for his chronic skin condition. [11]

On December 17, 2007, an answer was filed on behalf of the Defendants [13], which set forth a general denial of the allegations contained in the complaint, and also asserted that Plaintiff had failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act.  After receiving an extension of time, the Defendants filed a response in opposition to Plaintiff's motion for a preliminary injunction.  [18]  On January 22, 2008, Plaintiff filed a motion for appointment of counsel to assist in acquiring the evidence needed to support his motion for injunctive relief.  [19]  Also on January 22, 2008, Plaintiff filed a motion to stay judgment on his motion for preliminary injunctive

---

*Grandstaff*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686(1987); *and Rodriguez v. Comas*, 888 F.2d 899, 903(1st Cir. 1989).

Indeed, the Prison Litigation Reform Act provides that physical injuries are a prerequisite for an award of damages for emotional distress under 42 U.S.C. § 1983.  This provision is now codified at 42 U.S.C. § 1997e(e), and has been held to be constitutional.  *See Zehner v. Trigg*, 952 F.Supp. 1318 (S.D.Ind. 1997), *affirmed*, 133 F.3d 459, 463 (7th Cir.1997)( "The restriction § 1997e(e) places on prisoners, therefore, is not even exclusive to them; *see, e.g., (Metro-North Commuter R.R. v. Buckley*, 521 U.S. 424, 117 S.Ct.2113, 138 L.Ed.2d 560 (1997)(["The Federal Employers' Liability Act precludes recovery for emotional damages from exposure to asbestos in the absence of symptoms of asbestos-related disease and] authoritatively interprets an Act of Congress to impose the same restriction upon a large group of non-prisoners.  This application to another group severely undercuts plaintiffs' argument that § 1997e(e) denies them equal protection.")).

relief until an attorney was appointed to represent him.  [20]

On February 11, 2008, a motion for summary judgment was filed on behalf of the Defendants [28] along with a response in opposition to Plaintiff's motion to appoint counsel and for a stay.  [29] On February 12, 2008, the undersigned issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified the Plaintiff of the summary judgment procedure.[7]  [30]  On March 14, 2008, the Plaintiff filed his response in opposition to the motion for summary judgment, along with another motion for the appointment of counsel [33], and a motion for an Order of Protection, which sought an order from the court "to prevent legal mail . . .from being opened.  [34]  On April 1, 2008, Defendants filed a response to the motion for an Order of Protection.  [35]  As the issues have been joined, this case is ripe for review by the undersigned.

### IV.  SUMMARY JUDGMENT STANDARD

The Defendants' motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Rule 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that:

---

[7]     In *Roseboro v. Garrison*, the Fourth Circuit held that *pro se* Plaintiffs must be advised that their failure to file responsive material when a defendant moves for summary judgment may well result in entry of summary judgment against them.

(1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id*. at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  When Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

## V.  DISCUSSION

## A. Introduction

As mentioned earlier in this Report, Plaintiff is no longer in the custody of the FCDC. Thus, to the extent Plaintiff seeks injunctive relief, his claims are moot. *Inmates v. Owens*, 561 F.2d 560, 562 (4th Cir. 1977); *see also Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987); *Buie v. Jones*, 717 F.2d 925, 927-929 (4th Cir. 1983); *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."); *Taylors v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) (holding that prisoner's transfer mooted a request for declaratory and injunctive relief).

Therefore, Plaintiff's motion for injunctive relief [11], his motion for appointment of counsel to assist him in obtaining injunctive relief [19], his motion to stay the motion for preliminary injunction until counsel was appointed [20], his second motion for appointment of counsel [33], and his motion to require FCDC officials to open his legal mail in his presence [34] **are moot**.

Plaintiff also asserts a claim for monetary damages, and a claim for monetary damages survives an inmate's release from custody. *Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 248-49) (4th Cir. 2005); *Clay v. Miller*, 626 F.2d 345, 346 (4th Cir. 1980) (*per curiam); see also Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir.2003) (finding that transfer to another jail did not moot damages claim for a suit filed pursuant to § 1915(g)); *Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976) (claim for monetary damages survives transfer). Therefore, Plaintiff's claim for monetary damages in this case is not moot, and must be considered by this Court on the merits.

## **B.  Exhaustion of Administrative Remedies**

In their answer, the Defendants offer several defenses to Plaintiff's claim for damages, including the defense that the Plaintiff failed to exhaust his administrative remedies prior to filing this action.  (Answer [13] at ¶ 14).  The Prison Litigation Reform Act of 1996 (the "PLRA"), codified as amended at 42 U.S.C. § 1997e(a), provides in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory.").  Thus, the PLRA requires prisoners bringing actions concerning prison conditions or other federal law to exhaust all available administrative remedies before suing in federal court.  *See Porter v. Nussle*, 534 U.S. at 532; *Booth v. Churner*, 532 U.S. 731, 741 (2001).  "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."  *Jones v. Bock*, Nos. 05-7058, 05-7142, 127 S.Ct. 910, 2007 WL 135890, *8 (Jan. 22, 2007) (*citing Porter*, 435 U.S. at 524).

In *Porter*, the Supreme Court emphasized that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  534 U.S. at 532.  Furthermore, *Porter* makes clear that the provisions in 42 U.S.C. § 1997e(a) applies to state prisoners.  *Porter*, 534 U.S. at 524.  The events alleged in the Plaintiff's Complaint are those which encompass "prison life," and therefore his case falls within the rule, articulated in *Porter*, that an inmate's exhaustion of administrative remedies is a prerequisite to filing suit.

The Plaintiff admitted in his Complaint that a grievance process exists at the FCDC and that he filed a grievance and received a final answer regarding the grievance, but he did not attach a copy of his grievance.[8]  In apparent contradiction to these statements, however, the Plaintiff also answered "yes" to the question:  "If there is no prison grievance procedures [sic] in this institution, did you complain to prison, jail, or institutional authorities?"[9]  Plaintiff stated: "I complain verbally and written[.]  [Sic]  No final answer the problem still exist."  [Sic][10]

The Defendants have the burden of showing that the Plaintiff failed to exhaust his administrative remedies.  *Anderson v. XYZ Corr. Health Services, Inc.,* 407 F.3d 674, 683 (4th Cir. 2005).  The Defendants raised exhaustion as an affirmative defense in their answer, but did not argue in their memorandum in support of summary judgment that Plaintiff had failed to exhaust his administrative remedies.  Therefore, the court is of the opinion that the Defendants have not carried their burden of proof with respect to this issue, and therefore will turn to the merits of the case.

## C.  Plaintiff's Action Pursuant to Section 1983

The United States Supreme Court has held:  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42 (1988).  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979).

---

[8]     Complaint [1] at p. 2, II, C and D.

[9]     *Id.* at p.2, II, F.

[10]     *Id.* at p. 2, II, G 1 and 2.

## 1.  Deliberate Indifference to Serious Medical Needs

Medical claims of a pretrial detainee (such as the Plaintiff here) are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment.  *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).  However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need).  *See Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (*citing Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

In order to establish a violation of the Eighth Amendment for inadequate medical care, a plaintiff must show that the defendants were deliberately indifferent to his serious medical needs.  *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citations omitted).  "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care."  *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001).  "Deliberate indifference is a very high standard -- a showing of mere negligence will not meet it."  *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).  Indeed, mere negligence or malpractice does not violate the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  Therefore, incorrect medical treatment, such as

an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983.  *Miltier*, 896 F.2d at 851.

Furthermore, the type and amount of medical care an inmate receives is discretionary.  *See Brown v. Thompson*, 868 F.Supp. 326 (S.D.Ga. 1994).  The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation.  *See, e.g., Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).  Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee a prisoner receive the treatment of his choice.  *Jackson v. Fair*, 846 F.2d 811, 817-18 (1st Cir. 1988).  It follows, then, that disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged.  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Furthermore, in the context of alleged indifference to serious medical needs, in order to state a Section 1983 claim, the plaintiff must allege that he suffered specific injury as a result of the specific conduct of a defendant, and show an affirmative link between the injury and that conduct.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).  Significantly, Section 1983 does not impose liability for violations of duties of care arising under state law.  *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 200-03, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).  Thus, even if the Plaintiff were able to show that the Defendants' actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

### a.  Deliberate Indifference--Medical Personnel

Whether a medical provider has been deliberately indifferent to a prisoner's serious medical need is a two part inquiry.  First, the plaintiff must allege a deprivation of medical care that was sufficiently serious (the objective component) and second, allege that there existed a "sufficiently

culpable state of mind" by the defendant (the subjective component).  *See Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  The first issue (the objective element) is whether the plaintiff has pled the deprivation of a serious medical need.  That element can be further broken down into two components:  (1) a serious medical need and (2) mistreatment or nontreatment of that need.

There is no clear definition of what constitutes a serious medical need.  However, the Eighth Amendment embraces the treatment of medical conditions which may cause future health problems. *Smith v. Preston*, 2007 WL 626191 at *3 (D.S.C. Feb. 23, 2007) (*citing Helling v. McKinney*, 509 U.S. 25, 35 (1993)).  "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'"  *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).  The objective element also requires the plaintiff to prove that his serious medical need was not timely or properly treated.  *Smith v. Preston*, 2007 WL 626191 at *3.  Although expert exploration may be required to aid the jury in determining the threshold standard of medical care, a jury may find, without further expert testimony, that certain actions fell so far below enunciated standard that they constituted gross indifference actionable under Section 1983.  *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990). Thus, summary judgment may not properly be based on an absence of a statement from an expert that the care given was grossly negligent when inferences drawn from the record could support such a finding.  *Id*.

The second element (the subjective component) requires a showing that the defendant's actions

were wanton.  The standard for wantonness depends upon the circumstance of the case.  *Smith v. Preston*, 2007 WL 626191 at *3 (*citing Wilson*, 501 U.S. at 302-03).  To be deliberately indifferent, a defendant must know of and disregard an objectively serious condition, medical need, or risk of harm.  *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997).  Deliberate indifference may be demonstrated by either actual intent or reckless disregard.  *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).  A defendant acts recklessly by disregarding a substantial risk of danger that is either known to him or which would be apparent to a reasonable person in his position.  *See, id.* at 852-53 (deliberate indifference to cardiac condition); *Mitchell v. Aluisi*, 872 F.2d 577, 580 (4th Cir. 1989) (denial of requests for medication); *Cooper v. Dyke*, 814 F.2d 941, 945-46 (4th Cir. 1987) (obvious risk created by gunshot wound); *Sosebee v. Murphy*, 797 F.2d 179, 182-83 (4th Cir.1986) (condition escalated into obvious risk); *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir.1978) (delay in treating an obviously broken arm).  Whether a prison official had the requisite knowledge is a question of fact subject to demonstration by inference from circumstantial evidence, and a fact finder may conclude that prison official knew of substantial risk from the very fact that a risk was obvious.  *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995).  A plaintiff must prove that the defendant was aware of facts showing a substantial risk of harm and also drew the inference that a substantial risk of harm existed.  *See, Johnson v. Quinones*, 145 F.3d 164, 167-68 (4th Cir. 1998) (although doctors knew of symptoms, there was no evidence that doctors knew of the medical condition underlying the symptoms).

## Claims against Nurse Edwards

As Nurse Edwards attests in her affidavit [28-3], she initially appraised Plaintiff's health on May 22, 2007, shortly after he was booked into the FCDC.  (*See*, Edwards Affidavit [28-3] at ¶ 7). Plaintiff had been incarcerated previously at the FCDC, and Nurse Edwards was aware that the FCDC medical staff had treated him for various complaints regarding his skin and rashes, and had been prescribed and provided with numerous medications, including triamcinolone, hydrocortisone, and antifungal creams.  (*Id.* at ¶¶ 9-10).  Nurse Edwards testified that Plaintiff's underlying skin complaints can be partly characterized as psoriasis, which can be treated, but will remain with the patient even after treatment.  (*Id.* at ¶ 11).  Nurse Edwards further testified that Plaintiff had "very poor personal hygiene"  and that Plaintiff's poor hygiene was directly related to the continued complained he expressed regarding his skin condition and rashes, included his diagnosis of staph infection during the incarceration at issue.  (*Id.* at ¶ 12).  According to Nurse Edwards, the Plaintiff did not submit any notable sick call requests until about August 7, 2007, when he requested hydrocortisone cream for his psoriasis, which was provided that day.  (*Id.* at ¶ 13).

On August 19, 2007, Plaintiff submitted a medical request regarding complaints about his skin and was seen by Nurse Edwards on August 20, 2007, who observed three areas on his thighs which appeared infected and were draining.  She appropriately cleaned and dressed with peroxide, sterile water and bactroban cream, and Plaintiff was prescribed an antibiotic and Motrin after consultation with Dr. Wilner.  (*Id.* at ¶ 14).  Plaintiff was diagnosed with a staph infection following my examination on August 20, 2007, and pursuant to the standing orders of the medical department at that time he was transferred to his own cell in Unit D of the FCDC to segregate him from other individuals. According to Nurse Edwards, the purpose of segregating individuals with staph infection is to reduce

the risk of transferring the infection to others and is a generally accepted medical principle. Thus, Plaintiff's segregation was necessary for the overall benefit of the other detainees in the FCDC. Finally, as Nurse Edwards explains, staff infections are not uncommon in institutional settings such as detention centers, schools and hospitals. (*See* Edwards Affidavit [28-3] at ¶¶ 15, 26).

Plaintiff was treated daily for ten days for his staff infection, and then was medically cleared and allowed to return to his original housing as authorized by the detention center. (*See* Edwards Affidavit [28-3] at ¶ 16).

On October 8, 2007, Plaintiff asked to see a dermatologist regarding his psoriasis; his request was forwarded to a local dermatologist through the United States Marshall Service because Plaintiff was a federal detainee at the detention center at that time. Nurse Edwards' office was advised that the dermatologist did not deem it necessary to examine Plaintiff and he was advised accordingly. (*See* Edwards Affidavit [28-3] at ¶ 17).

From October 8, 2007 to November 21, 2007, Plaintiff was continually treated for psoriasis. Following a sick call request on November 21,2007, he was again examined and diagnosed with a staff infection under his unshaven beard. Plaintiff was counseled regarding his poor personal hygiene, his wounds were cleaned and treated, another regimen of antibiotics and medication were started pursuant to Dr. Wilner's orders, and he was segregated for treatment of the staff infection. (*See* Edwards Affidavit [28-3] at ¶ 18).

Plaintiff threatened to refuse his antibiotic treatment because he wanted to return to his original dorm assignment, but Plaintiff eventually complied with medical orders and the staff infection was appropriately treated. (*See* Edwards Affidavit [28-3] at ¶ 19).

According to Nurse Edwards, Plaintiff has been continually treated by FCDC staff for psoriasis

and his complaints regarding his skin condition, including having lab work authorized and prednisone prescribed to him, in addition to his other medications and treatment.  Plaintiff has not been treated for any additional diagnoses of staph infection.  (*See* Edwards Affidavit [28-3] at ¶ 20).  Furthermore, Nurse Edwards is not aware of any outbreaks or epidemics of staph infection at the FCDC at any time in which Plaintiff has been incarcerated.  (*See* Edwards Affidavit [28-3] at ¶ 21).

Finally, Nurse Edwards has testified that at all times in her dealings with Plaintiff, she and her staff acted in accordance with generally accepted medical practices.  At no time did Nurse Edwards deny Plaintiff medical attention, or fail to examine him thoroughly.  Based upon Nurse Edwards' review of the medical records, Plaintiff received appropriate medical care at all times.  Finally, from Nurse Edwards' review of the records, at no time was anyone from the medical department or security staff at the detention center deliberately indifferent to a serious medical need of Plaintiff's, and furthermore, Plaintiff has not had a serious medical need.  (*See* Edwards Affidavit [28-3] at ¶¶ 24-27).

The Plaintiff's medical records indicate that Plaintiff received medical treatment on numerous occasions for his complaints.  (*See* Edwards Affidavit, Exhibit A).  Plaintiff has not offered any evidence which tends to show that the treatment he received at the hands of Nurse Edwards was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" *Miltier v. Beorn*, 896 F.2d at 851 (4th Cir. 1990) (citations omitted) or that Plaintiff was harmed by any alleged lack of medical care.  The court has reviewed the medical records attached to Nurse Edwards' affidavit and does not find any support for Plaintiff's argument that she was deliberately indifferent to his medical needs.  Indeed, the Plaintiff was treated for his medical complaints during all pertinent time periods in which he communicated with the Defendants.  *(See* Edwards Affidavit, Exhibit B).  The fact that Plaintiff would have preferred a different treatment or

medication than what was prescribed by a physician or thought appropriate through the independent

professional judgment of the medical providers is not sufficient to state a § 1983 constitutional claim.

In conclusion, Plaintiff has failed to demonstrate that Nurse Edwards was any respect deliberately

indifferent to a serious medical need of the Plaintiff in violation of the Fourteenth Amendment.  Under

these facts, Nurse Edwards is entitled to summary judgment.

### b.  Deliberate Indifference–Non-medical Personnel

Finally, Plaintiff has not alleged any evidence to establish that the defendants Brunson, Eli, or

Redden were deliberately indifferent to a serious medical need.  Under these facts, all of the

Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment claim.

### B.  Conditions of Confinement

Claims related to conditions of confinement for pretrial detainees are analyzed pursuant to the

Fourteenth Amendment utilizing the same analysis for claims brought pursuant to the Eighth

Amendment.  In order to establish cruel and unusual punishment under the Eighth Amendment, an

inmate must establish that "the deprivation of [a] basic human need was objectively 'sufficiently

serious,'" and that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'"

*Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (citations omitted).  The United States

Supreme Court has determined that only extreme deprivations are sufficient to satisfy the objective

component of an Eighth Amendment claim regarding conditions of confinement.  *Hudson v.*

*McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  In order to demonstrate such an

extreme deprivation, a prisoner must allege "a serious or significant physical or emotional injury

resulting from the challenged conditions."  *Strickler*, 989 F.2d at 1381.  In the alternative, the inmate

must show a substantial risk of such serious harm resulting from his exposure to the challenged

conditions. *See De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (citations omitted).

It is well-settled that "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). Consequently, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." 441 U.S. at 538. It also has been determined that a transfer from one facility to another or from one housing unit to another typically does not implicate a liberty interest. A detainee does not have a protected interest in remaining in or being released into the general population. *Refitt v. Nixon*, 917 F.Supp. 409, 412 (E.D. Va. 1996). Similarly, there is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Ange v. Paderick*, 521 F.2d 1066 (4th Cir. 1975); *and Lyons v. Clark*, 694 F. Supp. 184, 187 (E.D.Va. 1988) (collecting cases), *affirmed*, 887 F.2d 1080 (4th Cir. 1989) [Table].

In the present case, Plaintiff generally alleges that he should not have been transferred to his current housing in the D Unit of the detention center, or in the alternative, that he should have been housed in the "open pod" housing and located in F Unit of the detention center. (*See* Plaintiff's Complaint). To the extent these claims attempt to recover money damages, and are not moot from Plaintiff's release from FCDC, it remains that any transfers Plaintiff underwent were made at the discretion of the FCDC officials, and therefore are not subject to review *unless* state or federal law places limitations on official discretion. *Hayes v. Thompson*, 726 F.2d 1015, 1016-1017 & n.1 (4th Cir. 1984) (collecting cases). As the facts indicate, Plaintiff initially was transferred to D Unit and placed in an individual cell for the purpose of medical segregation for the treatment of staph infection.

(*See* Edwards Affidavit, ¶ 15). This classification and treatment were clearly for the prevention of the spread of staph infection and was medically necessary. *Id*.

During the time period in which the Plaintiff was housed in D Unit, he was also issued disciplinary tickets for minor violations which affected his classification status. (*See* Redden Affidavit, ¶¶ 4-5, 7; Eli Affidavit, ¶¶ 8, 10). Furthermore, the Plaintiff was medically segregated in D Unit and treated for a second staph infection in November and December, 2007. *(See* Edwards Affidavit, ¶¶ 18-20). The Plaintiff also was advised that there was not available housing in F Unit where he wished to be housed. (*See* Eli Affidavit, ¶ 8; Brunson Affidavit, Exhibit A). Finally, the appropriate FCDC personnel determined it would be prudent to have the Plaintiff remain in D Unit, which is still general population, to limit his exposure and possible spread of staph infection amongst other individuals. (*See* Brunson Affidavit, ¶ 11; Eli Affidavit, ¶¶ 11-12).

Plaintiff's complaints about his conditions of confinement at the FCDC are without merit, as his housing was determined in accordance with legitimate governmental purposes. All of the Defendants are entitled to summary judgment regarding Plaintiff's conditions of confinement claims.

### C.  Eleventh Amendment Immunity

The Defendants contend that the Plaintiff's § 1983 claims against the defendants for money damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity. Defendants also argue that the action against the defendants should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as employees of the Sheriff of Florence County at the time of the allegations complained by Plaintiff, they are entitled to Eleventh Amendment Immunity.

In *Gullege v. Smart*, 691 F.Supp. 947 (D.S.C. 1988), the court undertook an analysis of the

status of South Carolina sheriffs.  Based on the following facts, the court concluded that South

Carolina Sheriffs were state officials: (1) the state constitution established the office of sheriff and

provided that the General Assembly determines a sheriff's powers and duties; (2) state law sets out the

sheriff's duties and compensation; (3) the sheriff's arrest powers relate primarily to state offenses; and

(4) the Governor is empowered to fill vacancies or remove the sheriff for misconduct.  *See Id*. at 954.

The court also found that deputy sheriffs are more closely connected to the state than the county.  See

*Id*. at 955.  Deputy sheriffs are agents of the sheriff and "are not employees of the county and [are] not

covered by county personnel policy and procedure."  *Cone v. Nettles*, 308 S.C. 109, 417 S.E.2d 523,

525 (S.C. 1992).

In *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996), the Fourth Circuit held that South

Carolina Sheriffs are State agents and are not amenable to suit in federal court by virtue of the

Eleventh Amendment.  Therefore, based on the above, it is recommended that Nurse Edwards, Lt.

Redden, Cpl. Eli, and Cpt. Brunson, all of whom are (or were) employees of the Sheriff of Florence

County are state officials and are not liable for monetary damages in their official capacities.

### D.  Qualified Immunity

In addition, to the extent that the Plaintiff seeks to proceed against the Defendants in their

individual capacities, the Defendants are entitled to qualified immunity pursuant to *Harlow v.

Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  To the extent that the acts

complained of by plaintiff were discretionary acts carried out by the Defendants, such acts are

protected by the doctrine of qualified immunity as each defendant was acting in his/her capacity as an

official of the State of South Carolina at all times relevant to this suit.

When a person is sued in his individual capacity, the court may consider whether that person is

entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity.  Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment.  For that reason, the issue of immunity should be addressed before discovery is allowed.

The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.
*Akers v. Caperton*, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow*, 457 U.S. at 818.  In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged."  Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent."  As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

*Wiley v. Doory*, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), *cert. denied*, 516 U.S. 824,

116 S.Ct. 89, 133 L.Ed.2d 45 (1995).  As discussed above, the Plaintiff fails to show that the

Defendants violated any of his clearly established constitutional or statutory rights.  Therefore, the

Defendants are entitled to qualified immunity in their individual capacity.  Thus, the undersigned

recommends that the Defendants' motion for summary judgment be granted on this issue.

### E.  State Law Claims

Assuming Plaintiff's § 1983 claim is dismissed by the Court and Plaintiff's complaint

somehow can be conceived to state an additional claim for relief under any state common law theory,

it is recommended that such claim(s), if any, should be dismissed as well, and the court should decline

to exercise pendent jurisdiction.  *See* 28 U.S.C. § 1367(c).

### RECOMMENDATION

Based upon the foregoing, it is recommended:

Plaintiff's motion for injunctive relief **[11] is moot;**

Plaintiff's motion for appointment of counsel **[19] is moot;**

Plaintiff's motion to stay **[20] is moot;**

Plaintiff's second motion for appointment of counsel **[33] is moot;**

Plaintiff's motion regarding the opening of his legal mail **[34] is moot;** and

and Defendants' motion for summary judgment **[28] should be granted.**

_George C. Kosko_
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

August 18, 2008

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).